UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEAGRAPE INVESTORS LLC,

            Plaintiff,

v.

KALEIL ISAZA TUZMAN, KIT CAPITAL LTD., KIT CAPITAL (NEVIS) LLC, OBRA PIA LTD., OBRA PIA (US) FEEDER, OBRA PIA MANAGEMENT, GP, LTD., OBRA PIA LTD., SURCUSAL COLOMBIA, AMANDA BLAUROCK, ROSARIO DAVI, JOSEPH P. GARLAND and KENNETH A. ELAN,

            Defendants.

No. 19-cv-9736 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

The Court assumes the parties' familiarity with the facts and lengthy procedural history in this matter, as well as its recent decision in the Related Action also pending before it. *See* Case No. 21-cv-7517 (S.D.N.Y.) ("Related Action") Dkt. No. 97. After its investment in a Colombian hotel project failed, Plaintiff Seagrape Investors LLC brought this action against various Defendants affiliated with Kaleil Isaza Tuzman and Obra Pia Ltd., a British Virgin Island company controlled by Tuzman that was responsible for developing the hotel. Although the action initially asserted claims for federal securities violations, fraud, breach of contract and breach of fiduciary duties, the Court dismissed all but the breach-of-contract claims in September 2020. *See Seagrape Invs. LLC v. Tuzman*, No. 19-cv-9736, 2020 WL 5751232, at *24 (S.D.N.Y. Sept. 25, 2020). Seagrape then filed a first motion for summary judgment that was withdrawn, Dkt. No. 115, and subsequently filed a second motion for summary judgment that was denied without prejudice, Dkt. No. 161. Seagrape renewed its motion for summary judgment, which the Court finally granted in July 2023, finding that Defendants Tuzman, Obra Pia, KIT Capital Ltd. ("KIT Capital Dubai"),

KIT Capital (Nevis) LLC ("KIT Capital"), Obra Pia Management, GP ("OP Manager") and Obra Pia Ltd., Surcusal Colombia ("OP Colombia") were liable for breach of contract by failing to pay money owed under an agreement called the Credit Security Acknowledgment ("CSA"). *See Seagrape Invs. LLC v. Tuzman*, No. 19-cv-9736 (RA), 2023 WL 4764022 (S.D.N.Y. July 26, 2023). In so holding, the Court also determined that Seagrape could immediately collect on that debt from all of those Defendants but Obra Pia, under the terms of a separate agreement (the "Subordination Agreement") the parties had signed. *See id.* at *4 (holding that the Subordination Agreement subordinated Seagrape's right to payment from Obra Pia but did not similarly subordinate its right to collect from Tuzman, OP Manager, KIT Capital and OP Colombia).

The Clerk then entered judgment on August 30, 2024, Dkt. No. 208, and entered an amended judgment on September 3, 2024 to correct a clerical error, Dkt. No. 209. That same day, Seagrape filed a letter asking for the judgment to be amended again so it stated the total judgment as a single dollar amount, which the Court approved on September 12, 2024. Dkt. No. 213 (second amended judgment).

Two weeks later, on September 27, Defendants filed the instant motion to amend the judgment under Federal Rule of Civil Procedure 59(e). *See* Dkt. No. 214. This motion asserted only one argument, that to date had never been raised: that Seagrape should not be permitted to collect immediately from OP Colombia, since it was merely a "branch" of Obra Pia that had no distinct legal status. *See* Dkt. No. 214 ("Defs. Rule 59 Mot.") at 1. Defendants reasoned that because the two entities were one and the same, Seagrape could not be allowed to collect from OP Colombia before it could do so from Obra Pia. Seagrape opposed Defendants' motion, primarily on the grounds that their argument had been waived. *See* Dkt. No. 218.

2

After the motion was fully briefed, the Court issued an order in the Related Action, which was filed by Seagrape against Tuzman and many of the same parties, directing Seagrape to clarify whether it was diverse from Tuzman and his various companies. *See* Related Action Dkt. No. 89. In its response, Seagrape disclosed that it was not diverse from one of the Defendants, OP Feeder, because "Seagrape itself is a limited partner in OP Feeder" and thus shares its citizenship. Related Action Dkt. No. 90 at 2. This disclosure prompted Seagrape to file a motion to correct the judgment in this action, which sought to drop OP Feeder as a party in order to preserve diversity jurisdiction. *See* Dkt. No. 226 at 1. The motion further pointed out that several Defendants that had been dismissed at the pleadings stage—Amanda Blaurock, Rosario Davi, Joseph P. Garland and Kenneth Elan—had been mistakenly included in the judgment and requested that the Court remove them. *See id.* Although Defendants agreed that "these parties should not have been named in the prior judgment," Dkt. No. 230 at 3 n.3, they opposed Seagrape's request to drop OP Feeder, arguing that it was an indispensable party that cannot be omitted under Rule 19, *id.* at 2.

For the reasons that follow, the Court grants Seagrape's motion to drop OP Feeder under Rule 21, as omitting it from the judgment would not cause enough prejudice to render it "indispensable" under Rule 19. It also denies Defendants' Rule 59(e) motion to amend the judgment to alter OP Colombia's payments obligations, on the grounds that Defendants failed to timely raise this issue. Finally, it grants Seagrape's motion to remove the dismissed individual defendants from the judgment under Rule 60(a).

## DISCUSSION

### I. Seagrape's Motion to Correct Judgment Under Rule 21

The Court begins with the Rule 21 motion, which implicates the Court's diversity jurisdiction. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal courts must determine

that they have jurisdiction before proceeding to the merits."). As Seagrape's own motion concedes, the presence of OP Feeder destroys diversity jurisdiction here. Limited partnerships like OP Feeder take the citizenship of each of their partners. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990). And "because Seagrape itself is a limited partner in OP Feeder," both entities are citizens of the same states. Dkt. No. 226 at 1. This action thus cannot proceed with OP Feeder as a party.

Seagrape nonetheless proposes to address this issue by dropping OP Feeder as a party under Rule 21, *id.*, which empowers a court to "drop a party" on motion or on its own accord, Fed. R. Civ. P. 21. Although Defendants assert that OP Feeder is "indispensable" and cannot be dropped, the Court disagrees.

Under Federal Rule of Civil Procedure 21, a court may "drop" a non-diverse defendant from a suit, so long as it is not indispensable to the action under Rule 19. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). Determining whether a party is "indispensable" under Rule 19 follows a two-step test. *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2000). First, the court decides whether the party is "necessary" under Rule 19(a), *id.*, which requires an assessment of whether complete relief can be accorded in its absence and whether proceeding without it would "impair or impede" its ability to protect its interest or create a substantial risk of inconsistent obligations, Fed. R. Civ. P. 19(a). If a party is found to be necessary, the court must then determine whether it is "indispensable" under Rule 19(b). *See Viacom Int'l*, 212 F.3d at 725. This inquiry turns on several factors that ask whether proceeding without the party would unduly prejudice it or others. *See CP Sols. PTE, Ltd. v. Gen. Elec.*, 553 F.3d 156, 159 (2d Cir. 2009).

Starting with Rule 19(a), OP Feeder is a necessary party. As the Second Circuit has held, "[i]f the resolution of the plaintiff's claim would require the definition of a non-party's rights under

a contract, it is likely that the non-party is necessary under Rule 19(a)." *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002); *see also Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir. 1996) ("The key issue in deciding whether either part of Rule 19(a) applies is the extent to which this case requires a determination of rights and interests under the [contract] to which the [non-party] is a party."). That describes OP Feeder here. Seagrape's breach-of-contract claims seek to define and enforce the Subordination Agreement, a contract that OP Feeder signed in order to facilitate a bridge loan to Obra Pia. *See Seagrape Invs.*, 2023 WL 4764022, at *1. In exchange for that consideration, OP Feeder agreed to subordinate its own loans to Obra Pia to a new loan supplied by a third party that was attempting to bail out the hotel project. *See id.* When the Court ruled on the meaning and scope of the Subordination Agreement in its summary judgment opinion, it necessarily made "a determination" of OP Feeder's "rights and interests" under the Subordination Agreement. *Peregrine Myan.*, 89 F.3d at 48. That makes it a necessary party under Rule 19(a). *See also Baldwin v. Interscope Records, Inc.*, 19-cv-8923 (JGK), 2021 WL 847976, at *5 (S.D.N.Y. Mar. 4, 2021) (collecting cases finding that party to contract in dispute is necessary under Rule 19(a)).[1]

But while OP Feeder is a necessary party, the Court ultimately concludes that it is not an indispensable one. To make that assessment, the Court looks to four factors: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment

---

[1] On a related note, OP Feeder does not appear to be necessary or indispensable to the fraud and fiduciary duty claims brought by Seagrape, which merely seek to hold OP Feeder jointly and severally liable along with other parties. *See Temple v. Synthes Corp.,* 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); *Kunina v. 7 W. 82 LLC*, No. 15-cv-4755 (SAS), 2015 WL 7075966, at *2 (S.D.N.Y. Nov. 12, 2015) ("It is settled federal law that joint tortfeasors are not indispensable parties.").

rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

First off, a judgment in OP Feeder's absence would not be unduly prejudicial to it. When courts assess prejudice, they examine the current status of the case, and assess whether a party's absence moving forward would cause it unwarranted harm. *See Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp., Inc.*, No. 03-cv-1036 (DJS), 2009 WL 10687800, at *6 (D. Conn. Nov. 19, 2009) (explaining that courts assess prejudice under Rule 19(b) based on the "prior rulings in this case," not "in a vacuum"). Here, the Court dismissed OP Feeder from the suit five years ago, and has already entered judgment on the remaining claims. *See Seagrape Invs.*, 2020 WL 5751232, at *24 (granting motion to dismiss federal securities fraud, common law fraud and breach of fiduciary duty claims against OP Feeder). Finalizing that judgment in OP Feeder's absence would not cause it any prejudice at this late stage, given that it already had a full opportunity to defend its interests and indeed, even secured its own dismissal on the merits. Moreover, this is not a case that seeks to void or cancel any contracts to which OP Feeder is a party, which would generally create a greater risk of prejudice than the contract claims here. *See Spencer Stuart Hum. Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, No. 17-cv-2195 (DLC), 2017 WL 4570791, at *3 (S.D.N.Y. Oct. 17, 2017) ("[T]here is unlikely to be prejudice to [the absent party] from . . . a finding that the contract had been canceled.").

The second factor asks whether any prejudice to OP Feeder could be mitigated through "protective provisions" in the judgment, or other ways to shape relief. Fed. R. Civ. P. 19(b). Neither party has proposed such measures here, so the Court considers this factor neutral.

The third factor, however, cuts sharply in Seagrape's favor, as rendering a judgment in OP Feeder's absence would be "adequate." *See* Fed. R. Civ. P. 19(b). This factor "concerns the social

interest in the efficient administration of justice," and is "influenced by the procedural posture in which the case comes to [the Court]." *CP Sols.*, 553 F.3d at 160 (internal quotation marks omitted). Dismissing the case for nonjoinder would do great harm to those interests. The parties have already litigated for six years, conducted and completed discovery and engaged in three rounds of summary judgment, which the Court ultimately granted. *See id.* (finding party dispensable when parties had "litigated for over two years" and "conduct[ed] discovery").

Finally, even if this action could be brought in state or foreign court, that consideration is outweighed by the other factors discussed above. *See id.* Put simply, dropping OP Feeder now and entering judgment will inflict little if any prejudice on it, and will further the public interest in efficiency. No matter whether Seagrape can bring this case elsewhere, it makes little sense to force that result given the late stage of this case. Taking the factors together, the Court thus concludes that OP Feeder is not indispensable and may be dropped under Rule 21.

In the Related Action, of course, the Court ruled otherwise, finding that OP Feeder was indispensable. *See* Related Action Dkt. No. 97. But the distinctions make all the difference here. In the Related Action, OP Feeder's absence posed a greater risk of prejudice, given that Seagrape had also asserted fraudulent transfer claims that aimed to cancel agreements to which OP Feeder was a party. *See Spencer Stuart*, 2017 WL 4570791, at *3. The Related Action was also still at the pleading stage, with the parties yet to conduct any discovery. That is worlds apart from the procedural posture of this action, which is in its twilight. *CP Sols.*, 553 F.3d at 160.

Nor is there any inconsistency in the Court's treatment of the potential for prejudice to Seagrape. As the Court explained in the Related Action, Seagrape bears much responsibility for the jurisdictional defect posed by OP Feeder, as it falsely represented to the Court in 2020 that it *was* diverse. Related Action Dkt. No. 97; *see* Dkt. No. 77 at 2 (Seagrape asserting, in response to

7

Court's jurisdictional inquiry, that "none of the OP Parties" shared citizenship with Seagrape). For that reason, the Court declined to give much weight to the risk of prejudice to Seagrape if OP Feeder were dismissed. Here, the Court similarly declines to give much weight to the potential that Seagrape would be prejudiced by dismissal. It bases its decision instead on the other Rule 19(b) factors, which overwhelmingly point in favor of dropping OP Feeder from the action, given the minimal prejudice it would cause to OP Feeder and the great harm dismissal would do to the public interest. Accordingly, while OP Feeder was found indispensable in the Related Action, the different nature and posture of this action call for a different result here.

Because OP Feeder is not an indispensable party under Rule 19, the Court agrees with Seagrape that it may be dropped from the action, and grants its Rule 21 motion requesting that relief.

## II.   Defendants' Motion to Amend Judgment Under Rule 59(e)

The Court next turns to Defendants' motion to amend the judgment under Rule 59(e). Relief under this provision is available "only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (alterations and internal quotation marks omitted). "A Rule 59(e) motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of the judgment.'" *4 Pillar Dynasty LLC v. N.Y. & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)); *see also* 11 Wright & Miller, Federal Practice and Procedure § 2810.1 (3d ed. 2025) (same). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving

8

party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

In their motion, Defendants argued, for the first time, that Seagrape should not be permitted to collect immediately from OP Colombia, on the ground that it was merely a "branch" of Obra Pia that had no separate legal personhood. Defs. Rule 59 Mot. at 2. According to Defendants, because OP Colombia was legally part and parcel of Obra Pia, it could not have any liability separate from it, and Seagrape should thus not be permitted to seek payment from OP Colombia before it can seek payment from Obra Pia. To support that argument, Defendants also attached new materials purporting to establish OP Feeder's corporate status, as well as a new declaration from a Colombian law expert asserting that, under Colombian law, branches like OP Colombia "lack[] legal personality" and are instead one and the same with their parent. *See id.* at 3 (quoting declaration). Although these new arguments and materials had not been raised in any of the three rounds of summary judgment briefing, Defendants now assert that the Court committed "clear error" in its summary judgment ruling and "overlooked" the fact that OP Colombia was indistinct from Obra Pia. *See id.* at 1.

Defendants' motion is denied. The standard for Rule 59 is as clear as it is strict: "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decisions issued." *Banister v. Davis*, 590 U.S. 504, 508 (2020). Defendants had multiple chances to raise their current argument but did not do so. The Court received not one but *three* rounds of summary judgment briefing, two of which dealt explicitly with whether Seagrape had an immediate right to payment against Defendants on the CSA. *See* Dkt. No. 143 at 18 (Defendants' opposition arguing that Seagrape's right to payment remained subordinated against all Defendants); Dkt. No. 176 at 7 (Defendants' opposition arguing same). But instead of raising the

"OP Colombia is a branch" argument they raise now, Defendants offered a different one entirely: that Seagrape could not collect against *any* Defendant until the senior loan was first satisfied.

Defendants suggest that they raised this issue in their answer to the operative complaint. *See* Dkt. No. 222 at 3. Not so. In that answer, Defendants merely denied Seagrape's allegation that Branch was a "100%-owned" subsidiary of Obra Pia, Dkt. No. 35 ¶ 17, and instead insisted that it was a "branch" under Colombian law, Dkt. No. 89 ¶ 17. At most, this statement made a factual allegation that could have been later used to develop a legal argument that Seagrape could not immediately collect from OP Colombia because it was a branch. But Defendants never closed the loop on that argument during the years of litigation that followed. They introduced no evidence to establish that OP Colombia was in fact a branch—until now, when they submitted a post-judgment declaration including OP Colombia's deed and other corporate records. *See* Dkt. No. 214 Ex. 4 (deed reflecting name change to OP Colombia); *id.* Ex. 5 (public deed of incorporation stating OP Colombia is a "branch"). Nor did they ever argue that OP Colombia's status as a branch could impact Seagrape's right to payment—again until now, when they made their Rule 59(e) motion. In short, Defendants' Rule 59 motion is premised not only on new "arguments" but also new "evidence," neither of which can be considered in a Rule 59 posture. *Exxon Shipping Co.*, 554 U.S. at 485 n.5 (internal quotation marks omitted).

Defendants also insist that Rule 59 relief is necessary in order to prevent a "clear error" and "manifest injustice." *See* Dkt. No. 222 at 1. It is anything but clear, however, that Defendants' "branch" argument is even correct. *See Philippeaux v. Entin*, No. 19-cv-2205 (RA), 2020 WL 918759, at *1 (S.D.N.Y. Feb. 26, 2020) (denying Rule 59(e) motion for lack of clear error). As previewed above, Defendants assert that OP Colombia and Obra Pia are one legal entity, which means that Seagrape cannot seek payment from OP Colombia separate from Obra Pia, since OP

10

Colombia cannot have any separate legal obligations from its parent. But that argument—that OP Colombia cannot have legal liability separate from its parent—is apparently contradicted by the parties' own contracts. The agreement under which Seagrape is suing, the CSA, singles out OP Colombia and makes it "jointly and severally liable" with Obra Pia and others under a prior agreement executed by the parties. Dkt. No. 190 Ex. 5 at 2. The CSA further includes OP Colombia as one of the several signatories (again along with Obra Pia) that is "jointly and severally obligated to pay Seagrape" the debt at issue. *Id.* at 3. If OP Colombia can be "jointly and severally" liable with Obra Pia, then it presumably can have separate legal obligations from it—and can be subject to collection from Seagrape even if Obra Pia's payment obligation remains subordinated, contrary to Defendants' current argument.

Nor is the Court persuaded by Defendants' legal declaration and authorities, none of which establish clear error. The declaration—submitted by a Colombia law expert—asserts that "branches" like OP Colombia have a "single legal personality" with their parents under Colombian law. Dkt. No. 214 Ex. 1 ¶ 8. But even assuming that is true, the declaration does not supply the premise necessary to complete Defendants' argument: that a creditor may not immediately collect payment from a Colombian branch when the foreign parent's payment obligation has been subordinated. And while Defendants cite several cases about the relationship between branches of *banks* and their foreign parents, those do not settle the matter either. Bank branches are treated as one with their parents for reasons unique to banking that may not apply to Colombian branches of foreign companies like OP Colombia. *See Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 863 (2d Cir. 1981) ("[F]oreign banks [are] permitted to operate only through branches [in order] to enable those depositing in foreign branches to gain more protection than they would have received had their money been deposited in locally incorporated subsidiaries of foreign

11

banks."). And at any rate, not even bank branches are treated as one legal entity with their parent for all purposes. *See Greenbaum v. Handlesbanken*, 26 F. Supp. 2d 649, 653 (S.D.N.Y. 1998) (Sotomayor, J.) ("It is true that, for certain purposes, both New York and federal law treat branches as separate entities."). It may well be that branches of foreign banks are likewise treated as distinct entities in some situations under Colombian law. Put simply, it is far from clear that OP Colombia's separate liability was even an "error," which only further closes the door on its tardy bid for Rule 59 relief.

### III.    Seagrape's Motion to Correct Clerical Error Under Rule 60(a)

Finally, Seagrape's letter asks the Court to correct a clerical error in the judgment. *See* Dkt. No. 226 at 1. Its letter points out that the judgment was incorrectly entered against several Defendants—Amanda Blaurock, Rosario Davi, Joseph P. Garland and Kenneth A. Elan—that the Court had previously dismissed from the action. *See id.*; *see also* Dkt. No. 213 (judgment). Defendants "agree that these parties should not have been named in the prior judgment." Dkt. No. 230 at 3 n.3.

Although Seagrape's letter does not specify which rule this request was made under, the Court construes it as a motion brought under Rule 60(a), which provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment." Fed. R. Civ. P. 60(a).[2] This provision authorizes courts to modify judgments to correct the parties named in it. *See Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 157 (2d Cir. 2001) (Rule 60(a) motion to correct party's name); *L.I. Head Start Dev. Servs, Inc. v. Econ. Opportunity*

---

[2] Rule 60(a) further provides that "after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave." While an appeal has been docketed in this matter, the Court may still grant this Rule 60(a) motion, since the appeal has been stayed pending resolution of the Rule 59 motion and is thus not "pending." Dkt. No. 223 at 1 ("Since at least one motion cited in FRAP 4(a)4 has been filed in the district court this appeal is stayed pending resolution of the motion(s)."); *see Jefferies Strategic Invs., LLC v. Weiss*, No. 24-cv-4369 (AKH), 2025 WL 1445744, at *1 n.1 (S.D.N.Y. May 20, 2025).

*Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 411 (E.D.N.Y. 2013) (adding party to judgment that was incorrectly omitted). Seagrape's request falls within that authorization here. In its 2020 ruling on the motion to dismiss, the Court dismissed all claims against Blaurock, Davi, Garland and Elan on the merits. *See Seagrape Invs.*, 2020 WL 5751232, at *22–24 (dismissing claims for breach of fiduciary duty and aiding and abetting the same). This judgment therefore should have stated that judgment was entered in their favor on Seagrape's claims against them, for the reasons stated in the Court's opinion. However, the judgment mistakenly stated that it was "entered in favor of Seagrape Investors LLC *against* . . . Amanda Blaurock, Joseph P. Garland, . . . Kenneth A. Elan, [and] Rosario Davi." Dkt. No. 213 at 1 (emphasis added). Because that was a clerical error, the Court grants Seagrape's Rule 60(a) motion to correct the judgment to reflect that judgment was entered in favor of these individuals.[3]

## CONCLUSION

Accordingly, the Court grants Seagrape's motion to drop OP Feeder as a party under Rule 21, denies Defendants' motion to amend the judgment under Rule 59(e) and grants Seagrape's motion to correct the judgment under Rule 60(a). The Clerk of Court is respectfully directed to (1) amend the judgment to omit OP Feeder as a party from the caption and to omit any reference to it in the body, and (2) to modify the body of the judgment to state that judgment is entered in favor of Blaurock, Garland, Elan and Davi on Seagrape's claims against them, for the reasons

---

[3] The Court declines to consider Seagrape's eleventh-hour suggestion that Defendant "KIT Capital Ltd." should also be removed from the judgment. Seagrape did not raise this issue until its reply letter, to which Defendants had no opportunity to respond. *See* Dkt. No. 231 at 2. Nor is it clear that KIT Capital Ltd.'s inclusion was a mere clerical error that could be corrected under Rule 60(a), given Seagrape itself alleged in its complaint that KIT Capital Ltd. was a party to the CSA and later breached it along with other Defendants. *See* Dkt. No. 35 ¶¶ 135–143. To the extent KIT Capital Ltd. believes judgment should not have been entered against it, it may make its own motion.

stated in the Court's order dated September 25, 2020. The Clerk of Court is also respectfully directed to terminate the motions pending at docket entries 214 and 22.

SO ORDERED.

Dated:    September 15, 2025
            New York, New York

_____
Ronnie Abrams
United States District Judge